This is Moore, Ms. Christensen. Thank you, Your Honor. May it please the Court, Counsel. Good morning, Your Honors. My name is Joanna Christensen. I represent the appellant, Jerame Moore, in this case. There are two issues in this case, first being one being intended loss and the second being a Thompson issue. The government's conceded the Thompson issue, so I won't address that unless the Court has any questions about it. Regarding the intended loss issue, there are two subparts to that. First, that the District Court didn't find that Mr. Moore intended the $30,000 plus in loss that the Court ultimately imposed on the sentencing guidelines, and the second, that he didn't use all of the cards to satisfy the use component of that intended loss. We're asking this Court to adopt the Tenth Circuit's reasoning in United States v. Manitow that there's a difference between knowledge and intent in the mens rea of the intended loss and actual loss portions of the guidelines. And in order to find intent, the District Court must find that the harm was purposely sought, the defendant purposely sought to inflict the harm. And in this case, there's just no evidence that he, Mr. Moore, could have inflicted the harm or purposely sought to inflict $30,000 worth of harm in this case. For example, Mr. Moore himself completed 13 transactions and with an average of $36 per transaction. And there's no evidence that they intended to stay in the Quad Cities, they had come from Chicago, intended to stay in the Quad Cities for any more than that day. They didn't have any overnight bags with them. And that they could have caused $30,000 in loss at Walgreens in one day defies logic, frankly. The second portion of our argument is in regards to whether the cards had been used, all 60 of them, or whether they were usable. In this court held in Rabu, I think it's Rabu, that in the victims concept, the information possessed about a victim is different from information used causing someone to be a victim. And we're asking this court to extend that holding to this case and the cards used versus the cards merely possessed. We believe that there's support for that argument not only in Rabu but also in the application note 3FI which includes charges made rather than simply cards possessed. And that would mean that only the cards that were actually used, swiped and even transactions would count towards loss in this case and that would result in a lower offense level for Mr. Moore. Finally, the cards also were obvious junk as described by one of the investigating officers and therefore could not have been used. They simply were not usable cards and anybody who had looked at them would say this card wouldn't work. It was essentially the same as using a library card to try and purchase something at Walgreens. In conclusion, unless the court has questions, I would also note since the government has on the Thompson issues that the court could send this back for further findings on the intended loss as well to the district court. I have just a question on the where the statute says that it shall not be less than $500 per access device. That's a minimum and they nailed them for the mere possession of them even though you say a lot of them wouldn't work. Is that come up with an intent or does that have to be actual? Well, it's a little unclear. The application note seems to apply to both actual and intended and that's certainly the way district courts have applied that special rule as we're calling it, but our differentiation is between those cards actually used because it says earlier in that application note charges made. There's a difference between the actual loss in the case was about $3,000. The charges they were actually able to charge onto these cards. There's some evidence that they tried multiple times to swipe either the same card or a different card. It's a little unclear. We would argue that that's actual use as well. The actual trying to do it is still using the card, but the cards that were not used in any way, either remained in the car or remained in a wallet or a pocket, could not qualify under that $500 special rule. Well, did they try to use the ones that they determined were no good or did they just think they were no good? Like I said, it's unclear. There was evidence that cards were, there were multiple transactions before one worked and it was unclear from that evidence whether it was the defendant saying, well let me try that again and do the same card again, or the defendant saying, or actually it was one of the co-defendants saying, well that one doesn't work, let me get another card and try it. You had a whole stack of them, huh? I guess so. Okay. And of course, you know, six times of, one would think six times of a different card would be extremely suspicious and that's probably perhaps why they were alerted in the first place. I see that my time has run out and I ask the Court to reverse and remand. Okay, thank you Ms. Christensen. Mr. Baum? Thank you, Your Honor. May it please the Court. Counsel, I would like to first correct an error I noticed in my brief as I was sitting in the gallery. I've inverted the names on the caption of my brief. It's an error I didn't catch until today and I apologize for that error. We do not believe, however, that the District Court clearly erred in applying the guidelines here to the 60 cards that were possessed. It's undisputed that they were unauthorized access devices and if one looks at the definition under section 1029E1, those are cards that can be used. In this case, they would not be able to use because they were of such poor quality, but that does not mean they were not access devices and therefore we believe the guidelines appropriately enhance the sentence for the possession of each unauthorized access device. I know time is short so I'd like to answer any questions that the Court would have. And then you're conceding on the other issue? On the supervised release conditions, yes we are, Your Honor. Thank you very much, Mr. Bone. So, Mr. Christensen, we thank you as a defender for handling this defense and we thank Mr. Bone as well and the Court will be in recess. Thank you.